```
_____ FILED          _____ RECEIVED
_____ ENTERED        _____ SERVED ON
              COUNSEL/PARTIES OF RECORD

              MAY 1 1 2012

         CLERK US DISTRICT COURT
           DISTRICT OF NEVADA
BY: _____ DEPUTY
```

1
2
3
4
5
6            **UNITED STATES DISTRICT COURT**
7                **DISTRICT OF NEVADA**
8
9
GREGORY EBELING,                    )
10                                  )
             Petitioner,            )      3:10-cv-0356-RCJ-WGC
11                                  )
vs.                                 )
12                                  )      **ORDER**
GREGG SMITH, *et al.*,              )
13                                  )
             Respondents.           )
14 _____/

15            Before the court are petitioner's First Amended Petition for a Writ of Habeas Corpus

16  Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (ECF No. 21), respondents' Answer

17  (ECF No. 42), petitioner's Reply (ECF No. 47).  For the reasons stated below, petitioner's amended

18  habeas corpus petition will be denied.

19  **I.       Procedural Background**

20            In April 2000, petitioner Gregory Eugene Ebeling, was charged with four counts of

21  sexual assault on a child under 14, one count of attempted sexual assault on a child under 14, seven

22  counts of lewdness with a child under 14, and three counts of indecent exposure, the result of

23  allegations that he sexually assaulted five young boys, including his son.  Exhibit 24.[1]  Following a

24

25  _____

26       [1] The exhibits referenced in this order were submitted by petitioner in support of his Amended
     Petition and are found in the Court's docket at ECF Nos. 22-41 unless otherwise noted.

1    jury trial, petitioner was convicted on all counts.  Exhibits 91 and 106. Petitioner was sentenced to

2    eleven life sentences with parole possible after a total of eighty years.  Exhibit 106.

3         On direct appeal, the Nevada Supreme Court determined that the petitioner could not

4    be convicted of both sexual assault and lewdness with a minor under the age of 14 when the

5    convictions involved a single act.  As a result the court vacated one of the convictions for lewdness

6    with a minor under the age of fourteen. Exhibit 125.  The court further vacated one of the

7    convictions for indecent exposure where two of the counts arose from a single exposure in front of

8    three victims. *Id.* The matter was remanded for resentencing.  Resentencing occurred in September

9    2004.  Exhibit 127.

10        Meanwhile, in June of 2002, petitioner filed a state post-conviction petition, which

11   remained mostly inactive until his direct appeal was completed. *See* Exhibit 128, pp. 5-6.  A

12   supplemental petition was mailed to the court on August 30, 2005.  Exhibit 134.  The petition was

13   denied by the trial court in October of 2007.  Exhibit 136.  Petitioner appealed.  Exhibit 138.  After

14   full briefing, the Nevada Supreme Court entered an Order of Affirmance on May 14, 2009.  Exhibit

15   141.

16        Petitioner filed his federal petition for writ of habeas corpus on April 28, 2010.  ECF

17   No. 12.  With the assistance of court-appointed counsel, he filed an amended petition on May 23,

18   2011.  The amended petition raises seven grounds for relief including claims related to his ability to

19   present a full defense and to confront witnesses against him, claims related to the performance of

20   trial and appellate counsel, claims of prosecutorial misconduct, judicial error in refusing to sever the

21   charges and a claim of insufficient evidence.  The matter is fully briefed. The merits of the claims are

22   discussed below.

23

24

25

26

## II.    Factual Summary[2]

Petitioner was convicted of sexually assaulting his son, Nicholas, and four of his friends, Justin, Frisco, Wally and Andrew, who were of a similar age.  The assaults occurred between Nicholas's ninth and twelfth year of age at times when the boys were spending time at Nicholas's house or on other occasions, such when the boys spent a night in a hotel with Ebeling. The assaults occurred in the living room of the residence, in Ebeling's bedroom, and in the shower. Not all the boys were assaulted at the same time, but some of the boys witnessed Ebeling fondling the others and during one sleep-over, Ebeling made Nicholas, Frisco, and Justin vote which of them would spend the night in Ebeling's bedroom with him. The assaults included exposure of Ebeling's penis to the boys, fondling the boys' genitals, performing fellatio on the boys, threats of fellatio and anal penetration in at least one instance.

## III.    Legal Standard

This Court's review of the case is controlled by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), specifically the provisions found at 28 U.S.C. § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thea AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are

---

[2] The summary of facts presented here is not intended to be factual findings of any kind. Rather it provides an outline of the events which gave rise to the criminal charges as derived from the testimony of the victims given at trial. *See* Exhibits 81 and 82.

3

given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). These standards of review "reflect the ... general requirement that federal courts not disturb state court determinations unless the state court has failed to follow the law as explicated by the Supreme Court." *Davis v. Kramer*, 167 F.3d 494, 500 (9th Cir. 1999). Therefore, this Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786 (2011).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of § 2254 "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003), citing *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000); *Bell*, 535 U.S. at 694.

Furthermore, a state court decision is an unreasonable application of clearly established Supreme Court precedent "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 73. The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* The state court's factual determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

**IV.  Discussion**

    A.  Ground One

Ground one of the amended habeas petition alleges that petitioner's Sixth and Fourteenth Amendment rights were violated when the trial court refused to allow defense counsel to

4

1  cross-examine some of the alleged victims regarding prior sexual knowledge.  Specifically, petitioner

2  contends that the defense wished to introduce evidence that Frisco had made similar allegations

3  against his step-father, that Nicholas and Frisco had claimed to have had sex with females when they

4  were five and ten years old, and that Justin had claimed to have engaged in oral sex with a young

5  female cousin.  Petitioner argues that the evidence that the boys had prior sexual knowledge and

6  experience would have impacted the jury's determination of their credibility.

7          This claim was raised by petitioner in his direct appeal and was denied by the Nevada

8  Supreme Court as being without merit in a footnote denial.  Exhibit 124, p. 1, n. 1.[3]  Determining if a

9  state court's decision was the result of an unreasonable legal or factual conclusion does not require

10  that there be an opinion from the state court which explains the state court's reasoning.  *Harrington,*

11  131 S. Ct. at 784.  However, in the absence of such an opinion, this Court must determine, from an

12  independent review of the record, that there was no reasonable basis for the state court to deny relief.

13  *Id.*

14          The Sixth Amendment guarantees the accused an opportunity to confront and cross-

15  examine his accusers.  However, cross-examination may be limited by the court where there are

16  concerns abut harassment, prejudice, confusion of the issue, witness' safety, undue repetition or lack

17  of relevance.  *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431 (1986);  *Davis v. Alaska,*

18  415 U.S. 308, 316, 94 S.Ct. 1105 (noting that cross-examination is "[s]ubject always to the broad

19  discretion of a trial judge to preclude repetitive and unduly harassing interrogation");  *Alford v.*

20  *United States*, 282 U.S. 687, 694, 51 S.Ct. 218 (1931) (holding that a trial court "may exercise a

21  reasonable judgment in determining when [a] subject [on cross-examination] is exhausted" and has

22  "a duty to protect [the witness] from questions which go beyond the bounds of proper

23  cross-examination merely to harass, annoy or humiliate");  *Wood v. Alaska*, 957 F.2d 1544, 1549-54

24

25          [3] Grounds two-four and seven were also summarily denied on appeal.  The same standard applies
    to this Court's analysis of those claims.

26

5

1  (9th Cir.1992) (explaining that even relevant cross-examination may properly be excluded if its

2  probative value is outweighed by other legitimate interests).

3     Factors to be considered by the court in limiting cross-examination includes the

4  relevance of the excluded evidence and, if relevant, whether legitimate interests outweigh the

5  defendant's interest in presenting the evidence. *Wood v. Alaska,* 957 F.2d at 1550. The examination

6  and determination of these factors is in the discretion of the Court. *Id.* Evidence that an accuser has

7  previously made false or fantastic statements of similar acts as those alleged at trial is admissible to

8  impeach the accuser's credibility. *See e.g. Franklin v. Henry,* 122 F.3d 1270, 1273 (9th Cir. 1997)

9  (overruled in part on other grounds, *Payton v. Woodford,* 346 F.3d 1204, 1218 (9th Cir. 2003)).

10     In *Franklin,* the evidence turned on the question of which witness to believe – the

11  defendant or the victim. The physical evidence was ambiguous and the victim's demeanor at the

12  time of the alleged assault was normal, offering no evidence of a traumatic event. The victim's

13  allegations were identical to the false allegations previously made by her against the her mother. In

14  contrast, here there were multiple victims who all told similar stories. While there was no physical

15  evidence of the assaults, the testimony of the victims, who at the time of trial were all young

16  adolescents, was extensively tested through cross-examination by counsel who was allowed and able

17  to bring out some testimony related to the victims' previous sexual knowledge or experience during

18  trial. *See* Exhibit 81, pp. 265, 277-79 (Nicholas admitted watching pornographic movie and claimed

19  to have had sex); Exhibit 82, pp. 540, 585-86, 619 (Justin admitted to looking at pornographic

20  magazines and claimed to have had oral sex with a girl named Amanda); Exhibit 82, pp. 663-664

21  (Frisco admitted to having sex with his sister and with his father). The complaints against petitioner

22  were not similar, with the one exception, to the purported prior sexual experience the victims'

23  possessed.

24     In addressing the defense's request to further impeach the victims' testimony by

25  introducing a psychologist's report containing information about some of the victims' previous

26

6

1    sexual activities, the court relied on Nevada case law articulating the state's rape shield law [4] to

2    conclude that considerations of "confusion of the issues, misleading the jury, or causing the jury to

3    decide the case on an improper or emotional basis" would foreclose that kind of testimony. Exhibit

4    86, p. 117. The court ruled that only if the particular instances referred to were "exactly the same or

5    similar" to the acts alleged against petitioner, would the expert be allowed to discuss them. *Id.* The

6    court made its decision in consideration of the potential ridicule and embarrassment that the

7    adolescent witnesses would experience if the testimony was allowed.  The court held that "unless

8    those prior sexual activities relate to the specific acts alleged to have occurred in this case" they

9    could not be discussed by the expert.  Exhibit 86, p.  1116.

10            Petitioner's Sixth Amendment right to cross-examine the witnesses against him was

11   not violated by the trial court's exclusion of the expert's hearsay testimony about the boys' prior

12   sexual experience.  Much of the information of victims' prior sexual activities and knowledge came

13   before the jury through the victims' own testimony.  Moreover, the testimony and opinion that was

14   excluded was done so in consideration of the various factors that properly inform the decision to

15   exclude.  Petitioner has not demonstrated that there is no reasonable basis for denying him relief on

16   this claim. *Harrington,* 131 S. Ct. at 784.  Thus, 28 U.S.C. § 2254(d) forecloses relief from this

17   Court.

18        B.      Ground Two

19            Petitioner claims that the trial court erred in refusing to allow petitioner to present

20   evidence of the mental health problems of the alleged victim, violating his Sixth Amendment right to

21   confront witnesses and his Fourteenth Amendment right to a fair trial.  Petitioner claims that the

22   denial of evidence about the witnesses' mental health interfered with his ability to test the credibility

23   of those witnesses.  The claim was denied on direct appeal without discussion.

24

25   _____

        [4] *Summitt v. State*, 101 Nev. 159, 697 P.2d 1374 (1985).

26

1    As discussed above, the petitioner has a constitutional right to present a defense and

2    to confront the witnesses against him. *See Giles v. California*, 554 U.S. 353, 358, 128 S.Ct. 2678,

3    2682 (2008), and to attempt to impeach the credibility of the witness. *See Davis v. Alaska*, 415 U.S.

4    at 315 ("[t]he cross-examiner is not only permitted to delve into the witness' story to test the

5    witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach,

6    i.e., discredit, the witness.").

7    At the hearing on the State's motion in limine to limit the defense's expert

8    psychologist's testimony about the victims' various diagnoses of Attention Deficient Hyper-Activity

9    (ADHA) and other emotional or psychological conditions and his opinion about a related propensity

10   of such individuals to be untruthful and, after an offer of proof as to the proposed testimony,

11   including the doctor's opinion that characteristics of such individuals include the tendency to be less

12   truthful, to be impulsive, and prone to lie, the trial court granted the State's motion and excluded any

13   questioning about the general truthfulness of children with such diagnoses. Exhibit 86, pp. 1097-

14   1099. The court determined that such testimony would be overly prejudicial and would lead the jury

15   to conclude that simply because the victim had such a diagnosis or personality trait, they would lie

16   while testifying. *Id.* The court based its decision, at least in part, on "a Supreme Court" opinion

17   which prohibits expert opinion on the veracity of a specific witness. *Id.* at 1106. The doctor was

18   permitted to testify about biasing factors in the interview process. *Id.* at 1116.

19   Petitioner cites to no United States Supreme Court decision which supports a

20   conclusion that he was entitled to have the jury hear the expert's opinion testimony on the

21   truthfulness of the witnesses' testimony. The record demonstrates that there was extensive argument

22   and an offer of proof as to the expert's intended testimony of children with these various diagnoses

23   propensity to lie and that the court considered and balanced the rights of the defendant and the

24   victims in making his decision. The court's conclusion was not clearly wrong, and petitioner has not

25

26
                                                8

1    demonstrated that there was no reasonable basis for the Nevada Supreme Court to deny him relief on

2    his state post conviction appeal.  This Court cannot offer petitioner relief on this ground.

3                    **i.    Cumulative Error**

4                    Petitioner also argues that the combined effect of the errors asserted in grounds one

5    and two deprived petitioner of due process.  However, this argument was raised for the first time in

6    the reply brief.  Because it is a new claim that has not been presented to the state court and

7    respondents have not had an opportunity to address it, the argument shall be disregarded.  *See*

8    *McMillan v. United States*, 112 F.3d 1040, 1047 (9th Cir.1997) (argument raised for the first time in

9    a reply brief is waived).

10                  C.    Ground Three

11                  Petitioner claims that the trial court erred in failing to sever the multiple offenses,

12   violating his rights to a fair trial as guaranteed by the Sixth and Fourteenth Amendments.

13                  Petitioner argued in a motion before trial that the charges should be severed because

14   the offenses involved different boys, occurred on different occasions and the evidence of one would

15   not generally be cross-admissible in a trial of another.  *See* Exhibits 43 and 51. The trial court

16   disagreed, finding that the evidence would be admissible in separate trial and found that severance

17   should not be granted. Exhibit 149.  Petitioner argued that, in fact, very little of the evidence of

18   sexual misconduct involving one victim was given through the testimony of another, and that, had

19   the offenses been severed and separate trials held, the testimony of the various victims would not

20   have been admissible in the others' trials.

21                  In opposition, respondents point to *U.S. v Lane,* which held that improper joinder of

22   trials does not rise to a constitutional violation unless the prejudice from joinder was so great that it

23   denied the defendant's right to a fair trial. *Id,* 474 U.S. 438, 446, n. 8 (1986).  If such misjoinder

24   occurs, then the Court must determine whether or not the error was harmless.  *Id.* at 446; *see also*

25   *Sandoval v. Calderon,* 241 F.3d 765, 771-72 (9th Cir. 2001).  Where joinder of counts or trials

26

                                                          9

1   allows evidence of other crimes to be introduced in a trial where the evidence would otherwise be

2   excluded, then undue prejudice may be found. *Id.* Consolidation of trials or charges is proper under

3   Nevada law where two or more acts or transactions are connected together or constitute parts of a

4   common scheme or plan. Nevada Revised Statutes (NRS) § 173.115(2). Petitioner argues that no

5   such commonality existed between the assaults. The evidence does not support this argument.

6          The victims in the cases were petitioner's son and his four friends. All of the acts

7   were committed by petitioner while the boys were present to spend time with his son. All boys were

8   of a similar age and all were familiar with and trusted petitioner as the father of their friend.

9   Petitioner allowed the boys to spend the night at his home and encouraged physical contact with the

10  boys either during wresting matches or by having other close physical contact that would not seem

11  inappropriate on its face, such as having the youngest boy sit on his lap while watching movies.

12  Thus, it is possible to conclude that petitioner devised his assaults upon victims that were of a similar

13  age and maturity as his son who were readily available to him through their friendship with Nicholas.

14  Petitioner used his son's friendships to build trust with his victims before assaulting them.

15         The evidence of the different assaults would have been admissible at separate trials

16  under Nevada law that allows evidence of motive, opportunity, intent, preparation, plan, identity or

17  absence of mistake or accident. NRS 48.045. The similarities in the acts, together with the

18  similarity of the victims would have provided support for admission under this state law provision.

19         Petitioner has not demonstrated that he suffered a violation of his right to receive a

20  fair trial through the joinder of the various counts brought at trial. Neither has he demonstrated that

21  the decision of the Nevada Supreme Court to deny the claim resulted from an unreasonable

22  application of clearly established federal law. 28 U.S.C. § 2254(d). The Court finds that the state's

23  postcard denial of this claim was reasonable and that petitioner has not demonstrated that there is no

24  reasonable basis upon which the state court could have denied relief.

25

26

D.      Ground Four

Petitioner contends that the prosecutor committed misconduct during closing arguments, denying him a fair trial and due process. Petitioner asserts that the prosecutor vouched for the child witnesses, belittled the defense and demonized petitioner, misstated the evidence and mislead the jury about the admissibility of evidence and urged the jury to use sympathy in their deliberations.

In reviewing this claim of prosecutorial misconduct, the Court must determine whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471 (1986); *see also Tan v., Runnels,* 413 F.3d 1101, 1112 (9th Cir. 2005). The remarks in question must be examined in the context of the whole trial, because improper comments, standing alone, do not justify a reversal of a criminal conviction which was otherwise obtained in a fair proceedings. *U.S. v. Young,* 470 U.S. 1, 11, 105 S.Ct. 1038, 1044 (1985). Where counsel fails to object to the asserted misconduct, the court reviews the claim under the deferential plain error standard, rather than the harmless error review afforded preserved errors. *U.S. v. Sanchez,* 176 F.3d 1214, 1218 (1999) (citing *United States v. Hinton,* 31 F.3d 817, 824 (9th Cir. 1994)). "To secure reversal under this standard, defendant must prove that: (1) there was 'error'; (2) the error was plain; and (3) the error affected 'substantial rights.' " *United States v. Turman,* 122 F.3d 1167, 1170 (9th Cir.1997) (citing *United States v. Olano,* 507 U.S. 725, 730-32, 113 S.Ct. 1770 (1993)).

i.      **Vouching for Witnesses**

Petitioner argues that the prosecutor vouched for her witnesses during closing arguments. Petitioner notes the prosecutor's reference to Justin's mother testifying that she knew he was telling the truth (Exhibit 91 at 1284), that all the children were telling the truth (*id.* at 1362); that Justin was cute and spontaneous (*id.* at 1286), and that none of the children was coached, but told the jury exactly what happened (*id.* at 1366). Counsel did not object to these references or comments.

11

1    Prosecutorial vouching, which places the "prestige of the government behind the

2  witnesses" is improper. *U.S. v. Molina,* 934 F.2d 1440, 1444-45 (9th Cir. 1991); *United States v.*

3  *McKoy,* 771 F.2d 1207, 1210-11 (9th Cir. 1985) (prosecutor may not express his opinion of the

4  defendant's guilt or his belief in the credibility of government witnesses). The single exception to

5  this rule is called the "invited response" doctrine, applicable in situations where the improper

6  argument is "invited" by the opposing party, such as when the defense argues that the prosecution's

7  witnesses have lied on the stand. *See U.S. v Young,* 470 U.S. at 11, 105 S.Ct. at 1044; citing *Lawn v.*

8  *United States,* 355 U.S. 339, 78 S.Ct. 311 (1958).

9    The Court finds that most of the comments were, in fact, an invited response to

10  arguments from the defense counsel. While the prosecutor did initially reference Justin's mother's

11  testimony that Justin was being truthful, such a reminder is not vouching by the prosecutor, it is

12  highlighting testimony. Moreover, her characterization of the child witness, Walter, as spontaneous

13  and natural, was not vouching, but was a comment on his demeanor on the stand, something the jury

14  would properly consider in determining the credibility of the witness.

15    The remaining comments were made during the State's rebuttal arguments in

16  response to the defense's arguments, a sample of which follows.

17    What you should have seen, what anybody would want to see in
       determining whether or not these children and each of them are telling
18       the truth with regard to the charges involving the, because as the
       prosecutor just told you, if there is a reasonable doubt about the
19       believability or accuracy of what these kids are saying, then you must
       find Mr. Ebeling not guilty.
20
Exhibit 91, p. 1296.
21
       There is every reason to believe that there is a commingling or
22       contaminating or pooling of information... At first nobody believed
       Justin. They waited two days before calling the police. Why? Because
23       a number of people have said, you know, Justin is the biggest liar ever.
       Nicholas said that. I believe Frisco as well. Justin is the biggest liar
24       ever. Not a credible person.

25  *Id.* at 1302.

26

> Be very careful about Justin.  Very careful about this child.  Perhaps one of the most—perhaps the child with the most significant prior history of concern, abuse and all of that.  That we need to find out what happen to his mind.
>
> Is he able to come up with these false allegations?  Would he lie...?

*Id.* at 1312.

> Gee, would a kid ever lie?  Of course they do.... Because children do lie.... You have to teach a kid how to tell the truth. And in this particular case, there's reason to believe that Justin didn't learn it. Hasn't learned it.

*Id.* at 1313.  These arguments call the children liars.  Thus, the prosecutor's comments on the witnesses' truthfulness were, for the majority, in response to the defense closing arguments.  As such, they were not improper.  *U.S. v Young,* 470 U.S. at 11.

### ii.    Belittling Defense and Demonizing Petitioner

Petitioner complains that the prosecution disparaged the defense throughout closing arguments, accusing counsel of attempting to confuse the young witnesses and attempting a cover-up through the presentation of certain witnesses.  Petitioner specifically notes the prosecutor's reference to his wedding date being April Fools Day and referring to him as every parent's worst nightmare. Petitioner avers that these inflammatory remarks denied him a fair trial.  There was no objection by the defense to these statements.

In reference to the counsel's purported attempts to confuse the young witnesses through the use of technical terms that the child would not understand, such characterization of counsel's use of technical terms is not unreasonable where counsel asked the young witness about the things that petitioner had done to him.[5]  As for the characterization that the defense was attempting a cover-up, respondents suggest that it was not improper given the record, where the

---

[5] Counsel used the terms fellatio and oral sex when questioning Andrew, terms which he, as a ten year old, did not know or understand.  Exhibit 81, pp. 384-385.

13

1  defense witness testified that he was unaware of the exact charges being brought against the

2  petitioner. *See* Exhibit 84, pp. 953-54.

3          Denigrating the defense as a sham could constitute prosecutorial misconduct. *U.S. V.*

4  *Sanchez,* 176 F.3d 1214 (9th Cir. 1999).   However, because counsel did not object to the statements

5  made in closing, the standard of evaluating such statements is plain error and this court does not

6  conclude that these statements affected the substantial rights of the petitioner. *Turman*, 122 F.3d at

7  1170.  Neither were the prosecutor's comments about petitioner's wedding date or her suggestion

8  that petitioner was a mother's worst nightmare improper under the plain error standard.  The

9  evidence strongly suggests that petitioner did not have any positive relationship with women and that

10  he worked at winning the trust of the young boys who were friends of his son in order to use that

11  relationships to be close to them emotionally and physically and to influence them to not report his

12  misconduct.

13          Petitioner has not demonstrated that there is any possibility that fair-minded jurists

14  could "disagree that the state court's decision conflicts with [Supreme Court] precedents."

15  *Harrington*, 562 U.S. ___, 131 S.Ct. at 786.

16          **iii.   Misstating the Evidence or Misleading the Jury**

17          Petitioner complains that the prosecutor misstated evidence that petitioner had

18  showered with a young defense witness named Danny, when Danny had actually testified that

19  petitioner had turned on the shower for him, but denied that petitioner had taken a shower with him.

20  However, as respondents note, Danny's testimony was contradictory on certain points which might

21  have allowed the inference that Danny and petitioner had actually been in the shower together. *Cf.*

22  Exhibit 84, p. 1046, and pp.1050-1051. Counsel for defense objected to the prosecutor's statements

23  in this instance, whereupon the court reminded the parties that the jury decided the evidence.  Exhibit

24  91 at 1354-1355.  These statements, taken in the context of the whole trial cannot be said to have

25  injected the proceedings with unfairness so as to deny due process.

26

1    Petitioner also contends that the prosecutor mischaracterized the testimony of the

2 defense expert, Dr. O'Donohue.  Dr. O'Donohuse testified about the biasing effect of certain

3 interview techniques and how such techniques might impact the truthfulness of the child's report of

4 abuse.  *See generally,* Exhibit 86, p. 1143, *et seq.*  The following exchange took place:

5    Q. Isn't it true, Doctor, that children often hesitate to disclose
        sexual abuse?

6    A. Yes, in many cases, they do not immediately tell, that's
        correct.  Particularly in cases where they are trapped and the

7        abuser could harm them, like a stepfather or somebody living
        in the home.

8    A. And particularly when it's their own parent; correct, Doctor?
    A. That's correct.

9    Q. And isn't it correct, Doctor, that oftentimes these children are
        threatened by the abuser?

10   A. Yes.
    Q. Isn't it true, Doctor, that children are more likely to minimize

11       or deny abuse actually occurred than they are to lie about it
        happening?

12   A. We don't know that, no.
    Q. Based upon your experience, Doctor, would you say it was

13       true that some children who are abused think that it is normal
        and that they deserve it?

14   A. That would be rare, but that has happened, yes.
    Q. Also, Doctor, some children believe they will be punished or

15       abused more severely if they tell; isn't that correct?
    A. Yes, some children do.

16   Q. Would you agree excessive punishment can cause antisocial
        behavior in children, Doctor?

17   A. Yes.
    Q. Would you agree, Doctor, that you should be cautious and

18       discredit a child who claims abuse?
    A. Yes.

19   Q. Isn't it true, Doctor, a child usually feels they have no choice
        but to put up with the abuse?

20   A. Yes.
    Q. Likewise, isn't it true that most children crave affection,

21       Doctor?

22   A. Yes.
    Q. An isn't it true that children will tolerate the abuse if they are
        also receiving affection or love?

23   A. Many children would, yes.

24 Exhibit 86, pp. 1205-06.

25

26

1    In closing, the prosecutor argued that Dr. O'Donohue had "confirmed that children

2    are much more likely to minimize or deny molestation than they are to make it up." Exhibit 91, p.

3    1357. Petitioner objects to this summary as a misstatement of the evidence. However, based upon

4    the foregoing excerpt, the Court concludes that the prosecutor's statement was a fair, if somewhat

5    exaggerated summary of the expert's testimony. The prosecutor's statement was not intentionally

6    misleading and did not result in a denial of due process for the petitioner.

7              **iv.     Appealing to Jury Sympathy**

8              Finally, petitioner argues he was denied due process by the prosecutor's argument that

9    the jury should be the children's "voice" because victims of child molestation are unable to speak as

10   a result of the "fear, shame, and fear and concern about not being believed." Exhibit 91, p. 1370.  In

11   fact, the prosecutor argued,

12              In child molestation cases, silence is maintained by fear,
              shame, and the fear and concern about not being believed.  You
13              heard these kids.  They testified about their fears.  About the
              defendant and how he threatened them.  And you heard them testify
14              about their shame, about being molested.  Do not shut these kids
              down by saying you didn't believe them.  They have a voice.  You
15              heard it loud and clear in court.

16   *Id.* Upon counsel's objection, the court instructed the jury to "not be swayed by sympathy." *Id.*

17              Petitioner argues that such comments "urged the jury to protect community values

18   and deter future lawbreaking by assisting in the solution of the social problem of child abuse.. .."

19   and were calculated to arouse the passions and prejudices of the jury.  The argument is not

20   persuasive.  Rather, it seems to this Court that the prosecutor was merely arguing the difficulty the

21   children had with coming forward in order to undercut the defense strategy that the children had

22   made up the story as a way to allow petitioner's son to go and live with his mother.  Prior to making

23   this statement, the prosecutor warned the jury not to be misdirected by the defense's assertions that

24   certain evidence was missing, but to focus on what the evidence was that had been presented. *Id. at*

25

26
              16

1 | *1369.*  Thus, her comments on what the jury had seen was a natural sequitur, not an appeal for

2 | sympathy.

3 |       Petitioner's claim of prosecutorial misconduct must fail.  He has not demonstrated

4 | that in the context of the whole trial, the statements made during closing argument infected the trial

5 | with unfairness.  Petitioner's due process rights were not violated by the prosecutor's arguments.

6 |     D.    <u>Grounds Five and Six</u>

7 |       **Ineffective Assistance of Counsel**

8 |       In both grounds five and six petitioner claims that he was denied effective assistance

9 | of counsel in violation of his rights under the Sixth and Fourteenth Amendments.

10 |       Ineffective assistance of counsel claims are governed by the two-part test announced

11 | in *Strickland v. Washington*, 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court held that a

12 | petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the

13 | attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the

14 | Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v.*

15 | *Taylor*, 529 U.S. 362, 390-391 (2000), citing *Strickland*, 466 U.S. at 687.  To establish

16 | ineffectiveness, the defendant must show that counsel's representation fell below an objective

17 | standard of reasonableness. *Id.*  To establish prejudice, the defendant must show that there is a

18 | reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

19 | would have been different. *Id.*  A reasonable probability is "probability sufficient to undermine

20 | confidence in the outcome." *Id.*  Additionally, any review of the attorney's performance must be

21 | "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in

22 | order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689.  It is the petitioner's

23 | burden to overcome the strong presumption that counsel's actions might be considered sound trial

24 | strategy and falls within the wide range of reasonable professional assistance. *Id.*

25 |

26 |

17

1          Ineffective assistance of counsel under *Strickland* requires a showing of deficient

2  performance of counsel resulting in prejudice, "with performance being measured against an

3  'objective standard of reasonableness,'... 'under prevailing professional norms.'" *Rompilla v. Beard*,

4  545 U.S. 374, 380 (2005). If the state court has already rejected an ineffective assistance claim, a

5  federal habeas court may only grant relief if that decision was contrary to, or an unreasonable

6  application of the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).

7        **Ground Five**

8          In this ground, petitioner claims that co-counsel for the defense was ineffective for

9  failing to adequately cross-examine the State's witnesses, particularly regarding their motivation to

10  lie, their inconsistencies with prior statements and on issues of credibility. Petitioner argues that

11  counsel should have been more aggressive in her cross examination to bring out Justin's inconsistent

12  statements to investigators, e.g., petitioner kissed him on the cheek (Exhibit 12, p. 11), petitioner

13  grabbed his privates when they wrestled (*id.* at 23), that Justin's girlfriend touched his butt (*id.* at

14  15), that Nick took bike grips and put them on his penis (*id.* at 28) and that Walter broke Justin's

15  Playstation (*id.* at 13). Justin's testimony at trial was that petitioner did not kiss him on his cheek

16  (Exhibit 82, p. 519-20), he denied that he had a girlfriend or that she had touched his butt (*id.* at

17  567), and he testified that Nick did not put the bike grips on his penis (*id.* at 565). Petitioner also

18  claims that counsel was inadequate in her cross examination of Frisco, offering similar examples.

19          Trial counsel's failure to impeach a witness's credibility on cross-examination may be

20  ineffective assistance. *Reynoso v. Giurbino,* 462 F.3d 1099, 1112 (9th Cir. 2006). However, the

21  manner in which cross-examination may be approached is considered a tactical decision, generally

22  not subject to post-conviction review by an appellate court. *Id.* at 1113. In this instance, defense

23  counsel was cross examining a small, ten-year old boy about a sexual assault and a police interview

24  which occurred some eighteen months prior. While she did question the child and attempted to

25  impeach him with a transcript of the previous interview, her tactics were not aggressive and she did

26

1   not press the child on his recollections as hard as she might have.  This does not, however, rise to a

2   level of ineffective assistance where it is clear that the cross-examination of the child was given to

3   the female counsel to give the appearance of compassion and patience and to avoid prejudicing the

4   jury with the appearance that the defense was beating up on the child victims.

5           This claim was considered and denied by the state court.  Exhibit 141, pp. 2-3.  The

6   Nevada Supreme Court's denial of this claim was not objectively unreasonable in its application of

7   *Strickland* or in its factual findings.  No relief is available to petitioner on this claim under 28 U.S.C.

8   § 2254(d).

9           **Ground Six**

10          In this ground, petitioner claims that appellate counsel was ineffective when counsel

11  failed to raise various claims on appeal, denying petitioner his Sixth and Fourteenth Amendment

12  right to counsel on appeal.

13          A convicted person is entitled to the effective assistance of counsel on direct appeal.

14  *Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of appellate counsel

15  are reviewed according to *Strickland's* two-pronged test.  *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th

16  Cir.1989); *United States v. Birtle*, 792 F.2d 846, 847 (9th Cir.1986); *See, also, Penson v. Ohio*, 488

17  U.S. 75 (1988) (holding that where a defendant has been actually or constructively denied the

18  assistance of appellate counsel altogether, the *Strickland* standard does not apply and prejudice is

19  presumed; the implication is that *Strickland* does apply where counsel is present but ineffective).

20  Thus, petitioner must show that his appellate counsel's performance was objectively unreasonable in

21  failing to identify and bring the claim and that there was a reasonable probability that, but for

22  counsel's unreasonable failure, he would have prevailed on his appeal.  *Smith v. Robbins,* 528 U.S.

23  259, 285 (2000).

24

25

26

19

1           **i.    Petitioner's counsel suffered a conflict of interest.**

2           Petitioner complains that a conflict of interest that arose with the Washoe County

3   Public Defenders office during the case caused an undue delay in his direct appeal proceedings, that

4   he never waived any conflicts and the conflicts remained after his conviction.

5           Apparently, the Washoe County Public Defenders Office identified a conflict of

6   interest prior to the preliminary hearing which involved the office's representation of the mother of

7   one of the victims. Exhibits 26 and 27. As a result, Mr. Widdis and Ms. Wilson were appointed for

8   trial. Exhibits 102 and 104. After his conviction, counsel sought to withdraw and the public

9   defender's office was appointed to represent petitioner on appeal. Exhibits 107and 108. However,

10  by that time, the prosecutor on the case had changed her employment to the public defender's office.

11  Exhibit 110. Ultimately, the trial court advised the state supreme court that the former prosecutor

12  had left the public defender's employ. Exhibit 111. The public defender was reinstated as appellate

13  counsel.

14          In reviewing this claim on appeal form post-conviction, the Nevada Supreme Court

15  denied relief stating:

16          In the context of an ineffective assistance of counsel claim
    based on an alleged conflict of interest, "[p]rejudice is presumed

17      only if the defendant demonstrates that counsel 'actively
    represented conflicting interests' and that 'an actual conflict of

18      interest adversely affected his lawyer's performance.'" *Strickland*,
    466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350, 348

19      (1980)); *see Clark v. State*, 108 Nev. 324, 326, 831 P.2d 1374, 1376
    (1992); *but see Cuyler*, 466 U.S. at 348 (holding that prejudice is

20      presumed if the district court fails to provide a defendant the
    opportunity to show that a potential conflict of interest, that the

21      defendant has timely objected to, impermissibly imperils his right to
    a fair trial). The existence of an actual conflict of interest must be

22      established on the specific facts of each case, but "'[i]n general, a
    conflict exists when an attorney is placed in a situation conducive to

23      divided loyalties.'" *Clark*, 108 Nev. At 326, 831 P.2d at 1376
    (quoting *Smith v. Lockhart*, 923 F.2d 1314, 1320 (9th Cir. 1991)).

24  

25          In the instant case, appellant fails to demonstrate that an
    actual conflict of interest existed. Appellant's appellate counsel
    testified that the public defender's office stopped work on the

26

1
2
3
4
5
6
7
8

> appeal when the former district attorney began employment with the
> public defender. Further, at the evidentiary hearing, the former
> district attorney testified that she had no involvement with
> appellant's direct appeal. In regards to the public defender's
> representation of a victim's mother in a separate matter, appellant
> did not demonstrate that any conflict of interest adversely affected
> his appellate counsel's performance. In addition, appellant failed to
> demonstrate that there was a violation of his speedy trial rights.
> *Furbay v. State,* 116 Nev. 481, 484-85, 998 P.2d 553, 555 (2000).
> Further, appellant failed to demonstrate that the delay in his direct
> appeal affected the outcome. The district court concluded that
> appellant failed to demonstrate a conflict of interest and substantial
> evidence supports that conclusion. Therefore, the district court did
> not err in denying this claim.

9   Exhibit 141, pp. 6-8.

10   Section 2254(d)(2) authorizes a federal court to grant habeas relief in situations where

11   the state court decision was based on an unreasonable determination of the facts in light of the

12   evidence presented in the state court proceeding. Section 2254(e)(1) provides that the state court's

13   determination of a factual issue is presumed to be correct, and may only be rebutted by a showing of

14   clear and convincing evidence. It is not the duty of this Court to substitute its own opinion for the

15   findings of the state courts. The Nevada courts' determination that there was no conflict of interest

16   between counsel and the petitioner in this case was not objectively unreasonable, and petitioner has

17   failed to present any clear and convincing evidence demonstrating otherwise.

18
19
      **ii.**    **Appellate counsel failed to argue that the life sentence coupled with
lifetime supervision violates the Fifth Amendment's Double Jeopardy
Clause.**

20

21   Petitioner asserts that appellate counsel should have raised a claim that he was

22   subjected to double jeopardy when he was sentenced to both imprisonment for life and to lifetime

23   supervision by the Nevada Department of Parole and Probation pursuant to NRS 176.0931.

24   The Double Jeopardy Clause affords a defendant three basic protections: " '[It]

25   protects against a second prosecution for the same offense after acquittal. It protects against a second

26   prosecution for the same offense after conviction. And it protects against multiple punishments for

21

1   the same offense.' " *Ohio v. Johnson,* 467 U.S. 493, 498-499, 104 S.Ct. 2536, 2540 (1984) (citations

2   omitted). Petitioner complains of a violation of the third protection. Whether his punishments are

3   multiple is "essentially one of legislative intent." *Id.* Thus, "if it is evident that a state legislature

4   intended to authorize cumulative punishments, a court's inquiry is at an end. *Id.* at n.8. The Nevada

5   Supreme Court denied relief finding that the state legislature's intent was clear and that its intent

6   was, in fact, to impose cumulative punishment. Exhibit 141, p. 10.

7           Based on the Nevada Supreme Court's determination, it is clear that even if appellate

8   counsel had raised the double jeopardy claim, there existed no likelihood of success on the merits.

9   Petitioner's claim that appellate counsel was ineffective on appeal is meritless. *See Smith v.*

10  *Robbins,* 528 U.S. at 285.

11          iii.     **Appellate counsel should have claimed that his life sentences violated the**
                     **Eighth Amendment's prohibition of cruel and unusual punishment.**
12

13          Petitioner claims his four consecutive life sentences with parole eligibility after a total

14  of eighty years are disproportionate to the crime committed.

15          The Eighth Amendment "forbids only extreme sentences that are grossly

16  disproportionate to the crime." *United States v. Bland*, 961 F.2d 123, 129 (9th Cir.) (internal

17  quotations omitted), cert. denied, 113 S.Ct. 170 (1992). "The Eighth Amendment does not require

18  strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are

19  'grossly disproportionate' to the crime." *Harmelin v. Michigan,* 501 U.S. 957, 1001, 111 S.Ct. 2680

20  (1991). Moreover, the Supreme Court has repeatedly stated that "[o]utside the context of capital

21  punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly

22  rare." *Solem v. Helm*, 463 U.S. 277, 289-90 (1983) (internal quotations omitted).

23          In denying relief on this claim, the Nevada Supreme Court noted that petitioner had

24  been convicted of sexually molesting five young boys on multiple occasions over a number of years

25  (Exhibit 141, p. 11), making his sentence justifiable and not disproportionate to his crimes.

26

                                                    22

1  Petitioner has not demonstrated that this determination by the state court was objectively

2  unreasonable, either in the application of clearly established federal law or in any factual

3  determinations.  No relief is warranted here.

4             iv.    **Appellate counsel should have claimed that the Nevada lifetime
                     supervision requirement was unconstitutionally imposed.**

5

6             Petitioner argues that the lifetime supervision requirement under NRS 176.0931 is

7  unconstitutional because it increases petitioner's punishment without having a jury determine the

8  appropriateness of the enhancement.

9             The Supreme Court held in *Apprendi* that, except for the fact of a prior conviction,

10  any facts that increase a defendant's sentence beyond the statutory maximum must be proved to a

11  jury beyond a reasonable doubt. *See Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348

12  (2000).  However, the appropriate punishment for a criminal conviction is a matter of legislative

13  intent and, where, as here, the legislature has unequivocally determined that an additional

14  punishment should be imposed for certain criminal convictions, and where no additional facts are

15  required before imposition of a penalty, *Apprendi* is not implicated.  *Ohio v. Johnson,*  467 U.S. at

16  498-499, 104 S.Ct. 2536.

17             NRS 176.0931 states in pertinent part: (1)  If a defendant is convicted of a sexual

18  offense, the court <u>shall</u> include in sentencing, in addition to any other penalties provided by law, a

19  special sentence of lifetime supervision."  (Emphasis added.)  Such directive is unequivocal and

20  imposes the additional punishment without any factual finding except those already found by the jury

21  - petitioner's guilt.

22             The Nevada Supreme Court found similarly, noting that "lifetime supervision does

23  not increase the maximum possible sentence based on additional facts not found by a jury or

24  admitted by a defendant. Rather, [it] is a mandatory special sentence imposed upon sex offenders

25  upon release after the expiration of the offender's prison term or parole or probationary period."

26

23

1  Exhibit 141, p. 9 (citations omitted).    Based upon this analysis, the court properly found that

2  appellate counsel was not ineffective because there was no likelihood of success on the merits of the

3  omitted claim.

4          No relief is warranted on this claim and none will be granted where petitioner has not

5  demonstrated that the state court's decision was objectively unreasonable under 28 U.S.C. § 2254(d).

6          **v.      Appellate counsel should have claimed that lifetime supervision imposes
                      unconstitutional restrictions on petitioner.**

7          Petitioner objects to the application of NRS 213.1245(p) and NRS 213.1258, which

8  impose indiscriminate limitations on a paroled sex offender's access to the internet or possession of

9  materials that may be deemed sexually explicit, contending such restrictions violate his first and

10  Fourteenth Amendment rights.  He argues that appellate counsel should have raised this issue on

11  direct appeal.

12          As properly found by the Nevada Supreme Court, this claim is not ripe for review

13  because petitioner has not been granted, nor has he completed parole or probation from his prison

14  sentence. *See National Park Hospitality Ass'n v. Dept. of Interior*, 538 U.S. 803, 807-808, 123 S.Ct.

15  2026 (2003). Because the claim cannot proceed until there is an actual case or controversy directly

16  affecting petitioner, the denial was not improper.  Moreover, as respondents note, petitioner has not

17  identified, and this court know of no United States Supreme Court holding that finds otherwise.

18          Petitioner has failed to demonstrate that he received ineffective assistance of appellate

19  counsel where none of the claims he suggests counsel overlooked would have won him relief on

20  appeal.  Grounds five and six shall be denied.

21      E.    Ground Seven

22          Finally, petitioner claims he was convicted on insufficient evidence in violation of his

23  rights under the Fifth and Fourteenth Amendments.  Petitioner contends that the witnesses against

24  him, his victims, were considered to be dishonest and/or psychologically or emotionally damaged so

25  as to impair their credibility.  He argues that none of the witnesses corroborated the others and that

26

24

1    there was no physical evidence which supported the purported sexual assaults or lewdness

2    convictions.

3            In determining a claim of insufficient evidence to support a conviction, "the relevant

4    question is whether, after viewing the evidence in the light most favorable to the prosecution, any

5    rational trier of fact could have found the essential elements of the crime beyond a reasonable

6    doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 C.St 2781, 2789 (1979).  "Circumstantial

7    evidence can be used to prove any fact, including facts from which another fact is to be inferred, and

8    is not to be distinguished from testimonial evidence insofar as the jury's fact-finding function is

9    concerned." *United States v. Stauffer*, 922 F.2d 508, 514 (9th Cir.1990); *Payne v. Borg,* 982 F.2d

10   335, 339 (9th Cir.1992).  Moreover, under Nevada law, a child victim's uncorroborated testimony is

11   sufficient to convict on a sexual assault charge.  *Rose v. State,* 123 Nev. 194, 203, 163 P.3d 408

12   (2007).

13           Petitioner was tried before a jury during six days of proceedings.  Exhibits 79-91.

14   The prosecution presented the testimony of the five victims and various other witnesses, including

15   twelve witnesses for the defense.  Petitioner's argument is that the victim witnesses were

16   unbelievable or unreliable.  It is the jury's duty to determine the credibility of the witnesses presented

17   at trial. *California v. Green,* 399 U.S. 149, 198, 90 S.Ct. 1930 (1970).  The jury in this case found

18   the witnesses credible and petitioner has not shown that the Nevada Supreme Court's denial of this

19   claim was objectively unreasonable or, in fact, that there was no reasonable basis upon which the

20   court could have denied relief.   *Harrington,* 131 S. Ct. at 784.  Ground seven shall be denied.

21   **V.      Certificate of Appealability**

22           Should petitioner wish to appeal this decision, he must receive a certificate of

23   appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435

24   F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir.

25   2001).  Generally, a petitioner must make "a substantial showing of the denial of a constitutional

26

25

1  right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529

2  U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the

3  district court's assessment of the constitutional claims debatable or wrong." *Id. (quoting Slack,* 529

4  U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating

5  that the issues are debatable among jurists of reason; that a court could resolve the issues differently;

6  or that the questions are adequate to deserve encouragement to proceed further. *Id.*

7           Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing

8  Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in

9  the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a

10  notice of appeal and request for certificate of appealability to be filed.  Rule 11(a).  This Court has

11  considered the issues raised by petitioner, with respect to whether they satisfy the standard for

12  issuance of a certificate of appealability, and determines that none meet that standard.  The Court

13  will therefore deny petitioner a certificate of appealability.

14           **IT IS THEREFORE ORDERED** that the First Amended Petition for Writ of

15  Habeas Corpus (ECF No. 21) is **DENIED**.

16           **IT IS FURTHER ORDERED** that no Certificate of Appealability shall issue.  The

17  Clerk shall enter judgment accordingly.

18           Dated this 11th day of May, 2012.

19

20

21

22  UNITED STATES DISTRICT JUDGE

23

24

25

26

26